UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RODNEY MELVIN,

                              Plaintiff,

                v.

CITY OF NEW YORK; CHERYL LEON, in
her official capacity; KAZIMIR
VILENCHIK, in his official capacity;
MONA SEHGAL, in her official capacity;
and JAMES ODDO, in his official capacity,

                              Defendants.

24-CV-4118 (RA)

OPINION & ORDER

RONNIE ABRAMS, United States District Judge:

Plaintiff Rodney Melvin brought this *pro se* action against the City of New York and officials Cheryl Leon, Kazimir Vilenchik, Mona Sehgal, and James Oddo (the "Defendants"), asserting various claims in connection with the denial of his application for a Master Fire Suppression Piping Contractor ("MFSPC") Class B license. After the Court granted Defendants' motion to dismiss the Complaint, Melvin filed an Amended Complaint. Now before the Court is Defendants' motion to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), as well as Melvin's motions for judicial notice, for reconsideration of the Court's denial of his request to serve Defendants with limited requests for admission, and for an order to show cause. For the reasons that follow, the Court grants Defendants' motion to dismiss, grants in part and denies in part Melvin's motion for judicial notice, and denies the remainder of Melvin's outstanding motions.

## BACKGROUND

The following facts are drawn from the Amended Complaint, Dkt. No. 42 ("Am. Compl."), and the documents attached thereto, as well as to the original Complaint. Dkt. No. 1 ("Compl.").

For the purposes of this motion, the Court "accept[s] all factual allegations as true and draw[s] reasonable inferences in favor of the plaintiff." *Sierra Club v. Con-Strux, LLC*, 911 F.3d 85, 88 (2d Cir. 2018). [1]

On April 9, 2022, Melvin applied to the New York City Department of Buildings ("DOB") for an MFSPC Class B license. *See* Am. Compl. ¶ 16. The DOB denied his application on July 20, 2022, based on its determination that he lacked the requisite full-time planning or design experience. *Id.* ¶ 18; Compl., Ex. A ("Melvin's License Rejection"). Following the denial, he undertook simultaneous efforts to challenge the DOB's decision, clarify the nature of the design and planning experience required for licensure, and obtain license application records for other applicants through New York's Freedom of Information Law ("FOIL"). [2] He commenced the instant action on May 28, 2024, initially asserting claims under 42 U.S.C. §§ 1983 and 1985 for violations of his First, Fifth, and Fourteenth Amendment rights, as well as various state law claims. Defendants moved to dismiss Melvin's Complaint, which this Court granted in its entirety, but allowed Melvin an opportunity to refile the equal protection claim within thirty days. Dkt. No. 41 ("Prior Opinion & Order") at 16–17.

Melvin subsequently filed an Amended Complaint, bringing a single violation of the Equal Protection Clause of the Fourteenth Amendment by way of 42 U.S.C. § 1983. Am. Compl. ¶¶ 65–86. Like before, he disputes the DOB's purported rationale for denying his application—namely, that he lacked the requisite planning and design experience for the license—and takes issue with what he characterizes as the lack of a clear standard for evaluating similar applications. *Id.* ¶¶ 9, 18. He maintains that five applicants with comparable experience to his were granted the same

---

[1] Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, omissions, and alterations.

[2] On August 2, 2023, after the relevant license criteria was modified, the DOB granted Melvin the MFSPC Class B license he sought. *See* Compl. ¶ 66, Ex. N.

license he sought, underscoring the allegedly arbitrary nature of the DOB's application process. *Id.* ¶¶ 27–43. His application, by contrast, was denied despite the fact, he complains, that he included "Experience Verification Forms from both past and current employers" along with several affidavits from former co-workers, detailing the requisite professional experience. *Id.* ¶¶ 44–47.

Melvin now alleges that he was discriminated against, not on the basis of race or age as he previously argued, but as a class of one who was "treated differently from other similarly situated applicants without any rational basis." *Id.* ¶ 69. In addition to seeking $70,000,000 in damages, he also seeks declaratory relief and a permanent injunction, compelling New York City to revise its licensing procedures. *Id.* at 23. Defendants have moved to dismiss, arguing that Melvin has failed to state a claim for an Equal Protection violation against him as a class of one. Dkt. No. 48 ("Defs. Br."). The Court agrees and grants Defendants' motion.

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). However, in "considering a motion to dismiss . . . the court is to accept as true all facts alleged in the complaint . . . [and] draw all reasonable inferences in favor of the plaintiff." *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007). "This rule applies with particular force where [the] plaintiff alleges civil rights violations or where the complaint is submitted *pro se*." *Chance v. Armstrong*, 143 F.3d 698, 701 (2d Cir. 1998). Indeed, "[w]here, as here, the complaint was filed *pro se*, it must be construed liberally to raise the strongest arguments it suggests. Nonetheless, a *pro se* complaint must state a plausible claim for relief." *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013).

3

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* On a Rule 12(b)(6) motion, the question is "not whether [the plaintiff] will ultimately prevail," but "whether his complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 562 U.S. 521, 529–30 (2011). In answering this question, the Court must "accept as true all factual allegations . . . but [is] not required to credit conclusory allegations or legal conclusions couched as factual . . . allegations." *Dane v. UnitedHealthcare Ins. Co.*, 974 F.3d 183, 188 (2d Cir. 2020).

## DISCUSSION

### I.    Consideration of Various Dates, Definitions, and Documents

Framing it as a motion for judicial notice, Melvin moves the Court to consider various dates, statutory definitions, and documents. *See* Dkt. No. 73 ("Mot. for Judicial Notice"); Dkt. No. 74 ("Pl. Br. in Support") at 8; Dkt. No. 75 ("Melvin Decl."). Defendants do not oppose the motion or dispute the accuracy of any of the dates, definitions, or documents that Melvin asks the Court to consider. Dkt. No. 77 ("Defs. Opp.") at 2–3. For the reasons that follow, the Court grants this motion with one exception.

Specifically, Melvin asks the Court to consider:

A.  The DOB's definitions of "fire suppression piping work," and "master fire suppression contractor," from the New York City Administrative Building Codes of 2008, 2014, and 2022. *See* Compl., "NYC Laws 2008;" "NYC Laws 2014;" and "NYC Laws 2022."

B.  The Supplemental Investigation Questionnaire MFSPC Class A, B, or C.

4

C. Definitions of "registered design professional," "design professional," "architect," and "engineer," as defined by NYC Admin. Code Section 28-101.5. *See* Compl., "Notice to Admit Respondents Objections."

D. The license issuance dates of one of the comparators—Bartlomiej Poziomka. *See* Am. Compl., Ex. F.

E. Definitions of "unauthorized practice of a profession," "practice of engineering," and "practice of architecture," as defined by NYS Education Law §§ 6512, 7201, and 7301. *See* Compl., "Affidavit in Support" at 4–6; Notice to Admit Respondents Objections at 7–8.

F. The DOB Employment Verification Forms and FOIL responses submitted by Melvin and the individuals to whom he compares himself. *See* Compl., Exs. D–I.

Although on a motion to dismiss, a court must generally "limit itself to the facts stated in the complaint," *Field Day, LLC v. Cnty. of Suffolk*, 463 F.3d 167, 192 (2d Cir. 2006), it can also consider "any written instrument that is attached to [the complaint] as an exhibit, incorporated in it by reference, or integral to the complaint." *de Fernandez v. MSC Mediterranean Shipping Co. S.A.*, 2024 WL 5047492, at *6 (S.D.N.Y. Dec. 9, 2024). Since all of the documents, dates, and statutory definitions he seeks for the Court to consider were incorporated into or attached to the Complaint as exhibits, the Court will consider them, with one exception: the Supplemental Investigation Questionnaire for MFSPC Class A, B, or C, which Melvin attaches to a declaration in support of this motion. *See* Melvin Decl. The Court does so because it cannot ascertain what year the questionnaire is from or whether it has since been updated. *In re Purdue Pharma L.P.*, 2025 WL 2831412, at *6 (Bankr. S.D.N.Y. Oct. 6, 2025) (denying motion for judicial notice with respect to an FDA website in part because "it may not be the latest information").

The Court may also take judicial notice of state statutes. *See Barkai v. Mendez*, 629 F. Supp. 3d 166, 188 (S.D.N.Y. 2022). Accordingly, the Court takes judicial notice of the pre-November 7, 2022 version and post-November 7, 2022 version of the operative New York City statute in this matter—Title 28, Chapter 4, Article 410 of the New York City Administrative Code ("NYC Admin. Code § 28-410.4.1").[3]

## II.      Class of One Equal Protection Violation of the Fourteenth Amendment

The Equal Protection Clause of the Fourteenth Amendment prohibits states from "deny[ing] to any person within [their] jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. In other words, the government must "treat all similarly situated people alike," *Cobb v. Pozzi*, 363 F.3d 89, 110 (2d Cir. 2003), a requirement that extends to municipal government actors. *See Willowbrook v. Olech*, 528 U.S. 562, 565 (2000). A plaintiff may bring an equal protection claim under a theory of either "selective enforcement" or "class of one" discrimination. See *Hu v. City of New York*, 927 F.3d 81, 91 (2d Cir. 2019). The Court's Prior Opinion & Order construed Melvin's equal protection claim based on a theory of selective enforcement and dismissed it for failure to state a claim. Prior Opinion & Order at 7–9.

In his Amended Complaint, Melvin reframes his grievance, previously grounded in race and age discrimination, as a class of one claim, which requires him to allege facts showing that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Analytical Diagnostic Labs, Inc. v. Kusel*, 626 F.3d 135, 140 (2d Cir. 2010). In class of one style claims, "the existence of persons in similar circumstances is offered not only to show disparate treatment, but to also 'provide an inference that the plaintiff was intentionally singled out for reasons that so lack any reasonable nexus with a

---

[3] *See* NYC Admin. Code § 28-410.4.1 (2022), Article 410: Master Fire Suppression Piping Contractor License; *see also* NYC Local Law No. 126 of 2021, https://www.nyc.gov/assets/buildings/local_laws/int_no_2261-A-2021.pdf.

legitimate governmental policy that an improper purpose—whether personal or otherwise—is all but certain." *Hu*, 927 F.3d at 94. In other words, "the disparate treatment and impermissible motive inquiries are virtually one and the same." *Id.* Given this consolidation, the Second Circuit has concluded that class of one claims "which rely on similarity alone should be subjected to a more stringent similarity standard than class-based discrimination claims," even at a motion to dismiss stage. *Id.* Although a plaintiff "is not required to proffer evidence of similarly situated individuals at the motion to dismiss stage, the court still must determine whether, based on a plaintiff's allegations in the complaint, it is plausible that a jury could ultimately determine that the comparators are similarly situated." *Vaher v. Town of Orangetown, N.Y.*, 916 F. Supp. 2d 404, 434 (S.D.N.Y. 2013).

Here, none of Melvin's proffered comparators satisfy the stringent similarity standard and fail to establish disparate treatment. Moreover, he has not plausibly alleged that he was singled out for any improper purpose, let alone for one lacking a reasonable nexus with a legitimate governmental policy. As such, his class of one equal protection claim must be dismissed.

**A. Requirements for Master Fire Suppression Piping Contractor License**

Licensing for an MFSPC Class B license is governed by NYC Admin. Code § 28-410.4.1. Under the version of the code in effect at the time of Melvin's application, April 9, 2022, applicants must have "had at least 7 years total experience within the 10 years prior to application in the *planning or design, and installation* of fire suppression piping systems under the direct and continuing supervision of a Department-licensed Master Fire Suppression Piping Contractor in the United States, with at least 2 years of such experience as a registered journeyman fire suppression piping installer." Melvin's License Rejection (emphasis added); *see also* NYC Admin. Code § 28-410.4.1.

Melvin's application detailed his professional experience, which spanned from 2014 to 2022, a total of eight years. *See* Melvin's License Rejection. In its rejection of his application, the DOB stated that it was "unable to confirm [that he was] engaged in . . . planning or design and installation experience at V. Barile," the first professional experience that Melvin cited. *Id.* In support of his application, Melvin submitted an Experience Verification Form ("EVF") from Matthew Walby, V. Barile's president, along with time sheets, reimbursement forms, inspection reports and "records related to a dispute between [Melvin] and the business." Melvin's License Rejection. The DOB concluded that these three years of experience did not count toward the required seven years of full-time experience because it appeared that Melvin's professional duties there focused primarily on inspection rather than "planning or design and installation of fire suppression piping systems." *Id.* at 2. Based on Melvin's "remaining experiences," the DOB "was only able to verify at most, four years, ten (10) months and ten (10) days of qualifying fire suppression work," *id.,* and thus denied his license application.

Melvin then filed a motion for reconsideration before the DOB, submitting additional evidence, including affidavits from co-workers, which, in relevant part, confirmed that Melvin had experience installing fire suppression piping systems at V. Barile, though it did not supply any additional support to suggest that Melvin had any planning or design experience. *See* Compl., Ex. L ("Request for Reconsideration"). In denying his motion for reconsideration, the DOB maintained that Melvin had still not demonstrated experience "in the planning or design of fire suppression piping systems," which "is a requirement for licensure," and declined to disturb its initial finding. *See* Melvin's License Rejection at 3–4.

Melvin alleges that the rejection of his application was the result of "deliberate, discriminatory" treatment by the DOB and was "devoid of any rational basis." Dkt. No. 52 ("Melvin's Repl.") at 4. He maintains—incorrectly—that the application criteria for the Class B

8

license remained consistent across the two relevant iterations of Section 28-410.4.1, and that as a result, the DOB's assessment that he lacked the requisite experience under the pre-November 7, 2022 version was misplaced. Am. Compl. ¶ 4. Contrary to his assertions, Section 28-410.4.1, which defines the required experience for the MFSPC Class B license, was amended effective November 7, 2022, several months after Melvin submitted his application, resulting in the broadening of the licensure requirements. NYC. Local Law No. 126 of 2021. In the version that controlled when Melvin submitted his application, the DOB required an applicant to have seven years of experience in the "planning or design, and installation, of fire suppression piping systems . . . ." *Id.* After the amendment, applicants no longer needed to show a background in planning or design, but instead had to show seven years of experience "in the performance of fire suppression piping work, including the planning or design of fire suppression piping systems." NYC Admin. Code § 28-410.4.1 (2022).

### B. Application

In support of his class of one equal protection claim, Melvin identifies five individuals whose experience, he argues, rivals his, but unlike him, were either granted MFSPC Class B or Master Plumber licenses. Am. Compl. ¶¶ 74–75; Compl., Exs. E, F, G, H, and I (collectively "Comparators' Applications"). Defendants respond that three of the five individuals are not, in fact, similarly situated, and that the remaining two do not support an equal protection violation claim regardless. *See* Defs. Br. at 9. The Court agrees and concludes that Melvin's allegations fall short of "rais[ing] a reasonable inference that [Defendants'] differential treatment," was due to a lack of a "reasonable nexus with a legitimate governmental policy." *Hu*, 927 F.3d at 100.

Unlike Melvin's application, each of the licensing applications of the first three comparators—David Kinchla, Michael Gallagher, and Robert DiGilio—contains an affirmative checkmark in the box responding to the question: "Did this full-time employment include the

planning or design of plumbing and/or fire suppression systems[?]" *See, e.g.*, Compl., Exs. G, H, and I. Although Melvin alleges that the "description of [their] duties . . . matched those detailed in [his] own form and supporting affidavits," Am. Compl. ¶ 41, the EVF provided by Matthew Walby, V. Barile's president, which constituted three years of Melvin's experience, failed to check that critical box. *See* Compl., Ex. C at 3. Accordingly, the Court finds that Kinchla, Gallagher, and DiGilio are not similarly situated individuals.

The two remaining comparators—Bartlomiej Poziomka and Edward Cortez—also fail to support Melvin's claim. Although Poziomka's initial application, Am. Compl., Ex. F at 8, indicates that he lacked the requisite design and planning experience, and despite this, he was awarded a plumbing license, in its response to the complaint Melvin lodged with the SDHR, the DOB stated that Poziomka's application was initially denied. *See* Compl., "DOB Complaint Answer" at 12. The DOB clarified that only upon reconsideration was his license granted, after it reviewed evidence establishing that Poziomka had in fact met all the licensure requirements. *Id.* Melvin appears to acknowledge this procedural history but attributes the DOB's renewed interest in investigating Poziomka's initial denial to his European heritage. *Id.*, Rodney M. Rebuttal at 9. Like the three aforementioned comparators, Melvin has not alleged sufficient facts to suggest that Poziomka is similarly situated to Melvin.

Lastly, Melvin alleges, and Defendants do not dispute, that Edward Cortez was awarded the license despite a lack of any planning or design experience. *See* Compl., Ex. E. In its response to Melvin's SDHR complaint, the DOB stated: "After conducting a diligent search, the Department has not been able to locate any records that would explain the Licensing Board's decision." DOB Complaint Answer at 12. While Melvin and Cortez's applications are similar in that neither have the relevant box regarding planning or design experience checked, Melvin fails to provide "facts from which it can be inferred that the differential treatment . . . was not a mistake." *Owens v. Cnty.*

10

*of Orange*, 2023 WL 6199736, at *6 (S.D.N.Y. Sept. 22, 2023). This is underscored by the fact that under the version of the administrative code in effect at the time, Melvin was not in fact entitled to the license that he claims others received. If anything, the issuance of the license to Cortez shows that sometimes undeserving candidates slip through the bureaucratic cracks, not that the DOB's practice was to regularly license unqualified individuals in contravention of the administrative code, only to single Melvin out by properly enforcing it. In any event, there are simply no facts alleged to support the "inference that [Melvin] was intentionally singled out for reasons that so lack any reasonable nexus with a legitimate governmental policy . . . ." *Hu*, 927 F.3d at 94.

As the DOB stated in its response to Melvin's SDHR complaint, given the amendment to NYC Admin. Code § 28-410.4.1, "had Mr. Melvin filed his application any time after November 7, 2022, the effective date of the 2022 Administrative Code which broadened the experience requirement, the Department would have likely concluded that he had sufficient experience to obtain the License." DOB Complaint Answer at 9. Indeed, upon re-application under the new code, Melvin was awarded the license in 2023. As such, the Court dismisses his class of one equal protection claim.

### C. Additional Bases

In further support of his argument that the DOB applies an arbitrary standard to plumbing license applications, Melvin also takes issue with the absence of definitional provisions for both "planning" and "design." Am. Compl. ¶¶ 22–24. But Melvin's own supplementary documents show that these terms were still tethered to meaning. As members of the DOB stated in their response to Melvin's question about what would constitute design for the purposes of the application: "Although there is no definition in the Building and Administrative Code for 'Design[,]' it can be inferred as the assembling or gathering of data for the proposed scope of work,

to meet all Code requirements and other regulations, and in full compliance with the construction documentation and specifications, submitted by the Licensed professional." Compl., Ex. D ("FOIL Request for Bronx Industry Meeting Minutes") at 3. Moreover, members of the Construction Codes Team at the DOB responded to Melvin's email inquiry stating that "[w]here terms are not defined through the methods authorized by 2022 NYC Building Code, such terms shall have ordinarily accepted meaning such as the context implies." Compl., Ex. K ("Email from Construction Codes Team").

Rather than accept these commonsense definitions, Melvin insists that the licensure requirements could not logically have mandated design and planning experience, since he posits that these skills are solely within the ken of certified architects and engineers. Am. Compl. ¶ 80 ("[T]he design and planning of fire suppression and plumbing systems fall exclusively within the purview of state-licensed engineers and architects. Despite this unequivocal statutory framework, the New York City Department of Buildings (DOB) improperly imposed such a requirement as a de facto condition precedent for Plaintiff's licensure, notwithstanding the legal impossibility of its applicability to MFSPC applicants.").

But Melvin has fallen short in his quest to plausibly allege a constitutional violation pursuant to the Equal Protection Clause as a class of one. Rather than exposing an intentional vendetta against him, or even an arbitrary process divorced from statute or standards, Melvin's trail of city, state, and federal correspondence disputing the initial denial of his license, reveals at most, an imperfect city charter applied reasonably consistently across applicants, including Melvin. *See Patrolmen's Benevolent Ass'n of City of New York, Inc. v. City of New York*, 2004 WL 3262798 (S.D.N.Y. Aug. 19, 2004) ("Obviously, it is not for a federal court to determine whether a municipality has correctly interpreted its own laws. However, the mere failure of the City to follow its own Charter provision correctly, even if established, would not give rise to an

equal protection violation where, as here, there are grounds upon which the distinctions that the City has drawn can rationally be justified.").

### C. Injunctive Relief

Melvin also seeks injunctive relief in the form of an order requiring New York City to "revise its licensing procedures and implement safeguards to prevent arbitrary and discriminatory treatment of applicants." Am. Compl. at 23. "It is well established that an injunction is a remedy, not a cause of action, and therefore can issue only on the basis of an independent claim for relief." *Pitcairn Props., Inc. v. LJL 33rd Street Assocs., LLC*, 2013 WL 705861, at *2 n.1 (S.D.N.Y. Feb. 21, 2013). Because Melvin has failed to state a substantive claim for relief, he is not entitled to an injunction.

## III.    Motions for Reconsideration and for an Order to Show Cause

Melvin also moves the Court pursuant to Local Civil Rule 6.3 and Fed. R. Civ. P. 60(b) to reconsider its prior order denying his motion to serve a limited set of requests for admissions, which he claims would have clarified various factual assertions in his Amended Complaint. Dkt. No. 62 ("Prior Order on Requests for Admission") at 2. He subsequently filed a motion for an order to show cause pursuant to Fed. R. Civ. P. 7(b) reiterating substantially the same requests, Dkt. Nos. 66, 67 (collectively "Mot. for Order to Show Cause"). Melvin seeks admissions from Defendants regarding the DOB's delegation authority regarding the license, clarification on the DOB's standard or lack thereof with respect to issuance of the license, a rationale for why his license was denied, and whether the City's current licensing practices are constitutional. Dkt. No. 57 ("Mot. Requesting Leave to File Requests for Admission") at 3–4.

This Court previously denied Melvin's application, stating that under Rule 12(b)(6), courts "do not consider matters outside the pleadings," on a 12(b)(6) motion to dismiss, Dkt. No. 59 ("Court's Prior Order on Mot. for Reconsideration") (quoting *Nakahata v. N.Y. Presbyterian*

13

*Healthcare Sys. Inc.*, 723 F.3d 192, 202 (2d Cir. 2013)), and sees no reason to disturb its prior decision or grant his nearly identical motion for an order to show cause. The motions are thus denied.

## CONCLUSION

Although the Court understands that Melvin is frustrated with the initial denial of his MFSPC Class B license, his claim fails as a matter of law. The Court grants Defendants' motion to dismiss Melvin's class of one equal protection claim, grants in part and denies in part Melvin's motion for judicial notice, and denies his remaining motions.

The Clerk of Court is respectfully directed to terminate the motions pending at Dkt. Nos. 47, 62, 66, 67, and 73 as well as any other outstanding motions, and terminate the case.

SO ORDERED.

Dated:    March 16, 2026
          New York, New York

_____
Ronnie Abrams
United States District Judge